IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | 1:13CV658 |
| PATRICK LLOYD MCCRORY, in his official capacity as Governor of North Carolina, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF
MOTION TO QUASH SUBPOENAS
TO STATE LEGISLATORS**

NOW COME Senator Phil Berger, Senator Tom Apodaca, Senator Thom Goolsby, Senator Ralph Hise, Senator Bob Rucho, Representative Thom Tillis, Representative James Boles, Jr., Representative David Lewis, Representative Tim Moore, Representative Tom Murry, Representative Larry Pittman, Representative Ruth Samuelson and Representative Harry Warren (collectively "the legislative movants"), by and through undersigned counsel, and hereby move to quash the subpoenas served on them by plaintiffs in the above-captioned action. In support of this motion, the legislative movants show the Court the following:

## NATURE OF THE MATTER BEFORE THE COURT

This action was filed by plaintiffs on 12 August 2013, challenging various provisions of the Voter Identification Verification Act, 2013 N.C. Sess. Laws 381, also sometimes referred to as H.B. 589. [DE 1] Plaintiffs filed their First Amended Complaint on 13 November 2013. [DE 26] On 13 December 2013, this Court consolidated this case with *League of Women Voters v. State of North Carolina* (M.D.N.C. 1:13CV660) and *United States v. State of North Carolina* (M.D.N.C. 1:13CV861) for purposes of discovery and scheduling. [DE 39]

## STATEMENT OF THE RELEVANT FACTS

On 4 December 2013, plaintiffs gave notice pursuant to Rule 45(a)(4) of the Federal Rules of Civil Procedure of their intent to serve subpoenas on various persons and organizations, including the legislative movants. On 10 December 2013, counsel for defendants in the North Carolina Attorney General's Office informed counsel for plaintiffs that he was authorized to accept service of all subpoenas to the legislative movants, with the exception of the subpoena to Senator Thom Goolsby, for which he did not yet have authorization. On 11 December 2013, plaintiffs served the subpoenas on the legislative movants, with the exception of Sen. Goolsby, through counsel in the North Carolina Attorney General's Office. On 18 December 2013, counsel for defendants in the North Carolina Attorney General's Office informed counsel for plaintiffs that he was authorized to accept service of the subpoena to Sen. Goolsby, and on 19 December 2013, plaintiffs served the subpoena on Sen. Goolsby, through counsel in the North Carolina

Attorney General's Office. All of the subpoenas served on the legislative movants are returnable 20 January 2014.

Each of the subpoenas served on the legislative movants purports to require the production of documents and includes what is designated as "Plaintiffs' First Set of Requests For Production" to each of the legislative movants. The documents sought in these requests for production are as follows:

1. All documents and communications received or created by you concerning the rationale, purpose, implementation, and/or text of H.B. 589.

2. All documents concerning communications between you and your constituents regarding any provision in H.B. 589 or any other election law proposed during the 2013 session of the General Assembly.

3. All documents concerning communications between you and any other legislator in the North Carolina General Assembly regarding any provision in H.B. 589 or any other election law proposed during the 2013 session of the General Assembly.

4. All documents concerning communications between you and the office of the Governor of North Carolina regarding any provision in H.B. 589 or any other election law proposed during the 2013 session of the General Assembly.

5. All documents concerning communications between you and any North Carolina state agency regarding any provision in H.B. 589 or any other election law proposed during the 2013 session of the General Assembly.

6. All documents concerning communications between you and any lobbyists, political organizations, or public interest groups regarding any provision in H.B. 589 or any other election law proposed during the 2013 session of the General Assembly.

7. All documents and communications received or created by you concerning procedural irregularities in enacting H.B. 589.

3

8. All documents and communications received or created by you related to any incident of in-person voter fraud or any incident of voter fraud involving absentee ballots from 1995 to the present.

9. All documents and communications received or created by you relating to reports or data issued by the State Board of Elections concerning proposed, debated, or enacted voting legislation during the 2013 session of the General Assembly.

10. All documents and communications received or created by you referring or relating to any estimate, report, study, or analysis of the number, race, and/or ethnicity of registered voters who do not have any of form of photo identification that is acceptable to vote under H.B. 589.

11. All documents and communications received or created by you referring or relating to estimates, reports, studies, or analyses of (i) the costs to voters to secure documents required to obtain the photo identification required to vote as set forth in H.B. 589; or (ii) the costs or expense to the State of North Carolina associated with implementing the photo identification requirement set forth in H.B. 589.

12. All documents and communications received or created by you referring or relating to a comparison of the State of North Carolina's voter registration database with NCDOT records, including but not limited to any such documents that provide a subset of registered voters who do not have an NCDOT-issued ID.

13. All documents and communications received or created by you referring or relating to any estimate, report, study, or analysis of H.B. 589's impact on future elections, including the impact of H.B. 589 on voter turnout, one-stop absentee voting (early voting), and/or potential increased waiting times at polls.

14. All documents and communications received or created by you referring or relating to any estimate, report, study, or analysis of any provision in H.B. 589 or any election law proposed or enacted during the 2013 session of the North Carolina General Assembly.

15. All documents and communications received or created by you relating to the cost or expense, including any estimates or analyses, of administering any provision in H.B. 589 or any election law proposed or enacted during the 2013 session of the North Carolina General Assembly.

4

16. All documents and communications received or created by you relating to the costs or expense of election administration for local, state, and federal elections, before the implementation of H.B. 589.

17. All documents and communications received or created by you relating to any data tracking, recording, and/or studying voting patterns by race.

Exhibits 1-13.

Undersigned counsel represents each of the legislative movants. None of the legislative movants has waived his or her legislative immunity, and none intends to do so.

## ARGUMENT

### I. Legislative Immunity Broadly Protects Legislators From Subpoenas in Civil Cases.

Each of the legislative movants is a member of the North Carolina General Assembly; indeed, the subpoenas to each of the legislative movants are addressed to him or her in his or her legislative capacity as "Senator" or "Representative." Moreover, all of the documents that plaintiffs seek to have produced pursuant to the subpoenas are documents that the legislative movants would have, assuming that they have them at all, in their capacities as legislators. There is no question that plaintiffs cannot seek this information from the legislative movants, who are entitled to absolute legislative immunity.[1]

---

[1] Chapter 120, Article 17 of the North Carolina General Statutes addresses legislative confidentiality, which is distinct from the common law protection of legislative immunity afforded to legislators. The North Carolina Supreme Court has found that Article 17 was enacted as an aspect of the North Carolina General Assembly's internal operations to protect certain defined legislative communications from disclosure. *Dickson v. Rucho*, 366 N.C. 332, 343, 737 S.E.2d 362, 370 (2013).

5

The United States Supreme Court has long recognized a broad right "of legislators to be free from arrest or *civil process* for what they do or say in legislative proceedings." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951) (emphasis added). The Supreme Court has expressly extended this protection to state legislators, *Tenney*, 341 U.S. at 372-76, with respect to actions within the "sphere of legitimate legislative activity." *Tenney*, 341 U.S. at 377. As the Fourth Circuit has emphasized:

> Legislative immunity's practical import is difficult to overstate. As members of the most representative branch, legislators bear significant responsibility for many of our toughest decisions, from the content of the laws that will shape our society to the size, structure, and staffing of the executive and administrative bodies carrying them out. Legislative immunity provides legislators with the breathing room necessary to make these choices in the public's interest, in a way uninhibited by judicial interference and undistorted by the fear of personal liability. It allows them to focus on their public duties by removing the costs and distractions attending lawsuits. It shields them from political wars of attrition in which their opponents try to defeat them through litigation rather than at the ballot box . . . Legislative immunity thus reinforces representative democracy, fostering public decision making by public servants for the right reasons.

*EEOC v. Wash. Suburban Sanitary Comm'n*, 631 F.3d 174, 181 (4th Cir. 2011).

Importantly, legislative immunity frees legislators not only from the consequences of litigation, it also frees them "from the burden of defending themselves." *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967). "Because litigation's costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181. "The purpose of the doctrine [of legislative immunity] is to prevent legislators from having to testify regarding matters

6

of legislative conduct, whether or not they are testifying to defend themselves." *Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988).

The scope of legislative immunity is broad and absolute. Unlike many privileges, it does not simply attach to the content of communications. Rather, it encompasses all aspects of the legislative process and forbids plaintiffs from seeking *any* production at all from the legislative movants. "Where, as here, the suit would require legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force." *Schlitz*, 854 F.2d at 45. Indeed, speaking specifically in the context of a federal agency—the Equal Employment Opportunity Agency—attempting to subpoena a local governmental unit for records, the Fourth Circuit stated "[l]egislative privilege against compulsory evidentiary process exists to safeguard . . . legislative immunity and to further encourage the republican values it promotes" and held that "if the EEOC or private plaintiffs sought to compel information from legislative actors about their legislative activities, *they would not need to comply*." *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181 (emphasis added); *Gravel v. United States*, 408 U.S. 606, 616, 628 (1972) (approving of protective order forbidding any questioning "concerning communications between the Senator and his aides during the term of their employment and related to [any] legislative act of the Senator"); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 532 (9th Cir. 1983) (affirming denial of motion to compel former federal legislator to testify in deposition about legislative matters).

7

Simply put, the law is clear that the legislative movants are not required and cannot be required to comply with the subpoenas and requests for production of documents served on them by plaintiffs. *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181. Legislative immunity provides the legislative movants with absolute protection from the discovery sought by plaintiffs. For this reason, the Court should quash the subpoenas served by plaintiffs on the legislative defendants.

## II. Plaintiffs' Anticipated Arguments Regarding Legislative Immunity are Without Merit.

In their responses to Defendants' Motion Regarding Order on Electronically Stored Information, plaintiffs claimed that legislative immunity was inapplicable – a position clearly at odds with controlling United States Supreme Court and Fourth Circuit precedent. Instead, plaintiffs claimed that the "Supreme Court has never resolved whether an absolute legislative privilege applies to state or local legislators in federal civil actions." [DE 51 at p. 14] Besides being in complete contravention of *Tenney* wherein the United States Supreme Court has clearly extended the privilege to state legislators in federal civil actions, plaintiffs' assertion relies on *United States v. Gillock*, 445 U.S. 360, 373 (1980). *Gillock*, however, involved consideration of legislative immunity as applied to a *criminal indictment*, not a "federal civil action," and as such it is plainly inapplicable here, particularly in the face of *Tenney*.

Plaintiffs also attempted to characterize the immunity as "qualified" but again the authority they cite misses the mark. [DE 51 at p. 14-15] For instance, *Ala. Educ. Ass'n v. Bentley*, No. CV-11-S-761-NE, 2013 WL 124306 (N.D. Ala. Jan. 3, 2013), relies on

8

*Small v. Hunt*, 152 F.R.D. 509 (E.D.N.C. 1994), also cited by plaintiffs. However, *Small* was a prison overcrowding case where the magistrate judge was deciding whether documents held by a "Settlement Committee", which happened to have as members some legislators, could be discovered in an action by the defendants to modify a prior settlement agreement. *Small* itself relied on *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292 (D. Md. 1992), which involved a party seeking discovery from a statewide redistricting committee appointed by the Governor and including as members both legislators and private citizens. None of these cases involved an attempt to seek discovery from legislators for actions taken by them directly related to quintessentially legislative conduct – voting in their legislative capacities on the floors of the legislative chambers on bills duly introduced and debated in the halls of a state legislature. Moreover, both *Small* and *Marylanders for Fair Representation* pre-date the controlling Fourth Circuit authority here: *Wash. Suburban Sanitary Comm'n*, 631 F.3d at 181.

Finally, plaintiffs cited *Favors v. Cuomo*, 285 F.R.D. 187 (E.D.N.Y 2012) and *Rodriguez v. Pataki*, 293 F.Supp.2d 302 (S.D.N.Y. 2003). Both *Favors* and *Rodriguez* rely, however, on *In re Grand Jury*, 821 F.2d 946 (3rd Cir. 1987), which considered legislative immunity as applied in the context of a *criminal prosecution*. While the scope of legislative immunity may or may not be "qualified" in the context of a criminal indictment or prosecution, nothing in *Tenney* or *Wash. Suburban Sanitary Comm'n*, where the privilege was considered in civil cases such as this one, is so limited. Accordingly, the legislative movants' motion to quash should be granted.

9

### III. Because the Applicability of Legislative Immunity is So Clear, a Privilege Log Should Not be Required.

Finally, in cases involving privileges analogous to legislative immunity, courts often recognize that preparing a privilege log is not necessary where the communications are plainly protected from disclosure. *Ryan Investment Corp. v. Pedregal De Cabo San Lucas*, 2009 WL 5114077, at *3 (N.D. Cal. Dec. 18, 2009) ("counsel's communications with the client and work product developed once the litigation commences are presumptively privileged and need not be included on any privilege log"); *Capitol Records, Inc. v. MP3Tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009); *United States v. Bouchard Transportation*, 2010 WL 1529248, at *2 (E.D.N.Y. Apr. 14, 2010) ("privilege logs are commonly limited to documents created before the date litigation was initiated. This is due to the fact that, in many situations, it can be assumed that all documents created after charges have been brought or a lawsuit has been filed and withheld on the grounds of privilege were created 'because of' that pending litigation"); *Frye v. Dan Ryan Builders, Inc.*, 2011 WL 666326, at *7 (N.D. W. Va. Feb. 11, 2011).

In fact, creation of a privilege log can itself erode the inviolate protections afforded by the legislative immunity. *Stix Products*, 47 F.R.D. at 339 ("even the identification of a communication between attorney and client in terms of the date and subject might well tend to defeat the very purpose of the privilege"). Accordingly, no privilege log should be required.

10

## CONCLUSION

For the foregoing reasons, the legislative movants respectfully pray that the Court quash the subpoenas served on them by plaintiffs.

This the 20th day of January, 2014.

ROY COOPER
ATTORNEY GENERAL OF NORTH CAROLINA

By: /s/ Alexander McC. Peters
Alexander McC. Peters
Senior Deputy Attorney General
N.C. State Bar No. 13654
apeters@ncdoj.gov
N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6900
Facsimile: (919) 716-6763

*Counsel for Defendants North Carolina and State Board of Election Defendants and for the Legislative Movants*

OGLETREE, DEAKINS, NASH SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr
N.C. State Bar No. 10871
Phillip J. Strach
N.C. State Bar No. 29456
thomas.farr@ogletreedeakins.com
phil.stach@ogletreedeakins.com
4208 Six Forks Road, Suite 1100
Raleigh, North Carolina 27609
Telephone: (919) 787-9700
Facsimile: (919) 783-9412
*Co-counsel for Defendants North Carolina and State Board of Election Defendants and for the Legislative Movants*

# CERTIFICATE OF SERVICE

I, Thomas A. Farr, hereby certify that I have this day electronically filed the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO QUASH SUBPOENAS TO STATE LEGISLATORS** with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

*Counsel for United States of America:*

John A. Russ IV
Catherine Meza
David G. Cooper
Spencer R. Fisher
Elizabeth M. Ryan
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
Room 7254-NWB
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Gill P. Beck
Special Assistant United States Attorney
Office of the United States Attorney
United States Courthouse
100 Otis Street
Asheville, NC 28801

*Counsel for NCAAP Plaintiffs:*

Penda D. Hair
Edward A. Hailes, Jr.
Denise D. Liberman
Donita Judge
Caitlin Swain
ADVANCEMENT PROJECT
Suite 850
1220 L Street, N.W.
Washington, DC 20005
phair@advancementproject.com

Irving Joyner
P.O. Box 374
Cary, NC 27512
ijoyner@nccu.edu

Adam Stein
TIN FULTON WALKER & OWEN
312 West Franklin Street
Chapel Hill, NC 27516
astein@tinfulton.com

Thomas D. Yannucci
Daniel T. Donovan
Susan M. Davies
K. Winn Allen
Uzoma Nkwonta
Kim Knudson
Anne Dechter
KIRKLAND & ELLIS LLP
655 Fifteenth St., N.W.
Washington, DC 20005
tyannucci@kirkland.com

13

*Counsel for League of Women Voter Plaintiffs:*

Anita S. Earls
Allison J. Riggs
Clare R. Barnett
Southern Coalition for Social Justice
1415 Hwy. 54, Suite 101
Durham, NC 27707
anita@southerncoalition.org

Dale Ho
ACLU Voting Rights Project
125 Broad Street
New York, NY 10004
dale.ho@aclu.org

Laughlin McDonald
ACLU Voting Rights Project
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
lmcdonald@aclu.org

Christopher Brook
ACLU of North Carolina Legal Foundation
PO Box 28004
Raleigh, NC 27611-8004
cbrook@acluofnc.org

*Counsel for Defendant Governor Patrick L. McCrory*

Karl S. Bowers, Jr.
BOWERS LAW OFFICE LLC
P.O. Box 50549
Columbia, SC 29250
butch@butchbowers.com

Robert C. Stephens
General Counsel
Office of the Governor of North Carolina
20301 Mail Service Center
Raleigh, North Carolina 27699
bob.stephens@nc.gov

This, the 20th day of January, 2014.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr

16887000.1