IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NORTH CAROLINA STATE CONFERENCE,      )
OF THE NAACP, et al.,                 )
                                      )
                  Plaintiffs,         )
                                      )
        v.                            )    1:13CV658
                                      )
PATRICK LLOYD MCCRORY, in his         )
Official capacity as Governor of      )
North Carolina, et al.,               )
                                      )
                  Defendants.         )
_____ )

LEAGUE OF WOMEN VOTERS OF NORTH        )
CAROLINA, et al.,                     )
                                      )
                  Plaintiffs,         )
                                      )
        v.                            )    1:13CV660
                                      )
THE STATE OF NORTH CAROLINA,          )
et al.,                               )
                                      )
                  Defendants.         )
_____ )

UNITED STATES OF AMERICA,             )
                                      )
                  Plaintiff,          )
                                      )
        v.                            )    1:13CV861
                                      )
THE STATE OF NORTH CAROLINA,          )
et al.,                               )
                                      )
                  Defendants.         )
_____ )

**MEMORANDUM ORDER**

THOMAS D. SCHROEDER, District Judge.

Several North Carolina legislators object to the United States Magistrate Judge's March 27 discovery order (the "Order") in these cases pursuant to Federal Rule of Civil Procedure 72(a). (Doc. 83 in case 1:13CV861; Doc. 97 in case 1:13CV658; Doc. 100 in case 1:13CV660.)[1] Plaintiffs have responded (Doc. 88) and moved to expedite the court's resolution of the objection (Doc. 87) in light of the Magistrate Judge's earlier order consolidating the three cases for the purposes of scheduling and discovery and setting of briefing deadlines for preliminary motions (Doc. 30). The court held a hearing on the objections on May 9, 2014. For the reasons set forth below, the legislators' objections will be sustained in part and overruled in part.

I.   **BACKGROUND**

   A.   **Nature of the Claims and Procedural Background**

On August 12, 2013, Governor Patrick L. McCrory signed into law North Carolina Session Law 2013-381, popularly known as the Voter Information Verification Act or House Bill 589 ("HB 589"). See 2013 N.C. Sess. Laws 381, http://www.ncga.state.nc.us/ Sessions/2013/Bills/House/PDF/H589v9.pdf. The law enacted several changes to the State's election laws. The League of

---

[1] Because of the similar nature of the filings in these related cases, the court will refer to documents in case 1:13CV861 except where necessary to distinguish the cases.

2

Women Voters of North Carolina and several other organizations and individuals (the "League Plaintiffs") filed a complaint in this court on the same day. League of Women Voters of N.C. v. North Carolina, No. 1:13CV660 (M.D.N.C. filed Aug. 12, 2013). The League Plaintiffs challenge HB 589's restriction of early voting, abolition of same-day registration, abolition of out-of-precinct voting, and elimination of the discretion of county boards of elections to direct polls to remain open an additional hour on Election Day. (See Doc. 1 in case 1:13CV660.) Pursuant to 42 U.S.C. § 1983, they bring claims under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (id. ¶¶ 75-82) and Section 2 of the Voting Rights Act of 1965 ("VRA"), 42 U.S.C. § 1973 (id. ¶¶ 83-97).

In a separate case filed that same day, the North Carolina State Conference of the NAACP and several individual plaintiffs (the "NAACP Plaintiffs") challenged other provisions of HB 589. N.C. State Conference of the NAACP v. McCrory, No. 1:13CV658 (M.D.N.C. filed Aug. 12, 2013). The NAACP Plaintiffs challenge the requirement that voters present photo identification, along with the provisions challenged by the League Plaintiffs, pursuant to the VRA. (Doc. 1 in case 1:13CV658 ¶¶ 81-97.) They also contest, among others, HB 589's provisions increasing the number of poll observers and people who may challenge ballots,

3

under both the Fourteenth and Fifteenth Amendments. (Id. ¶¶ 98-119.)

On September 30, 2013, the United States Department of Justice (the "United States") filed a complaint challenging various provisions of HB 589. United States v. North Carolina, No. 1:13CV861 (M.D.N.C. filed Sept. 30, 2013). Pursuant to the VRA, the United States alleges that many provisions of HB 589 – including the photo identification requirement, the reduction of early voting, and elimination of same-day registration and out-of-precinct provisional ballots – have the purpose or effect of abridging the right to vote of African-Americans. (Doc. 1 in case 1:13CV861 ¶¶ 95-100.)

On December 13, 2013, the Magistrate Judge consolidated the cases for the purposes of scheduling and discovery. (Doc. 30.) Then, on January 27, 2014, the court allowed several young voters (the "intervenors") to intervene in the League of Women Voters case. (Doc. 62 in case 1:13CV660.) In addition to the sections of HB 589 challenged by the other plaintiffs, the intervenors challenge the law's elimination of pre-registration for 16- and 17-year-olds. (Doc. 63 in case 1:13CV660 ¶¶ 81-88.) They bring their claims under both the Fourteenth and Twenty-Sixth Amendments, pursuant to 42 U.S.C. § 1983. (Id. ¶¶ 95-106.)

Case 1:13-cv-00658-TDS-JEP   Document 105   Filed 05/15/14   Page 4 of 28

## B.  Subpoenas to Third-Party Legislators

Throughout December 2013, Plaintiffs served North Carolina State Senators Phil Berger, Tom Apodaca, Thom Goolsby, Ralph Hise, and Bob Rucho, as well as State Representatives Thom Tillis, James Boles, Jr., David Lewis, Tim Moore, Tom Murry, Larry Pittman, Ruth Samuelson, and Harry Warren (collectively, the "legislators") with subpoenas *duces tecum* pursuant to Federal Rule of Civil Procedure 45. (Docs. 44-1 through 44-13.) The subpoenas sought production of documents related to the passage of HB 589, including communications between the legislators themselves and between the legislators and third parties. (See id.) The legislators moved to quash the subpoenas on the ground of legislative immunity. (Doc. 44.) Plaintiffs responded (Doc. 58), and the legislators replied (Doc. 65). Plaintiffs also moved to compel production of documents previously requested from the State of North Carolina as to which the State has objected on the grounds of legislative immunity and legislative privilege. (E.g., Doc. 58 in case 1:13CV658; Doc. 70 in case 1:13CV660.) These motions seek to compel the production of documents in the possession of Defendants, including the State of North Carolina and the State Board of Elections.

## C.  The Magistrate Judge's Order

The Magistrate Judge held a hearing on the various motions

to compel and to quash on February 21, 2014. (Doc. 75.) At the hearing, the Magistrate Judge took the motions under advisement and ordered supplemental briefing on the legislative immunity and privilege issues. (Id. at 123.) On February 26, Defendants (including the State, Governor McCrory, and the State Board of Elections), the United States, and the NAACP Plaintiffs filed supplemental briefs. (Docs. 70, 72, & 73.) The Magistrate Judge then issued the Order, granting in part and denying in part the motions to compel and motions to quash the subpoenas. (Doc. 79.) The Order concluded that the asserted legislative privilege was not absolute, but qualified, and must be evaluated under a "flexible approach," taking into account the serious claims raised under the Constitution and the VRA. (Id. at 6, 9.) The Magistrate Judge directed the parties to meet and confer and to file a joint report by April 7 presenting specific remaining disputes as to particular categories of documents. (Id. at 10.) In so doing, the Magistrate Judge noted the need for the parties to address whether North Carolina public records law might require the production of certain documents even if otherwise subject to a claim of privilege. (Id. at 7.) Finally, because any privilege could be waived, the Magistrate Judge set a deadline for Defendants to provide Plaintiffs the identity of any legislator upon whom they would rely for purposes of the preliminary motions so as to permit Plaintiffs

6

to take additional discovery of those legislators, should they wish. (Id. at 7, 10.)

Upon the legislators' motion (Doc. 84), the Magistrate Judge stayed all deadlines in her Order pending this court's resolution of the legislators' objections to it.

### D. Legislators' Objections

The legislators raise five objections to the Magistrate Judge's Order which fall into three general categories. In the first group, the legislators contend that absolute legislative immunity confers upon them an absolute privilege shielding them from any obligation to respond to the subpoenas. (Doc. 83 at 2-3.) More specifically, the first objection states, "[t]he [legislators] object to the Order's failure to recognize an absolute legislative immunity from discovery, contrary to Supreme Court and Fourth Circuit precedent." (Id. at 2.) The second objection restates the first in slightly different terms: "[t]he [legislators] object to the Order's holding, contrary to Supreme Court and Fourth Circuit precedent, that legislative privilege is qualified, whether in the context of a claim brought under the [VRA] or otherwise." (Id.) The third objection is to the Magistrate Judge's conclusion that the document requests be evaluated "on a case-by-case basis." (Id. at 3.)

In the second area of objection, the legislators take issue

7

with the Magistrate Judge's statement in a footnote that Defendants acknowledged at the February 21 hearing that a "carve-out" exists that limits the legislative privilege in redistricting cases under the VRA. (Id. at 3 (objection 4) (citing Doc. 79 at 5 n.1).) In the third category, the legislators object – to the extent it will limit their right to present rebuttal evidence – to the Order's requirement that they notify Plaintiffs by a date certain which, if any, legislator upon whom they will rely has elected to waive the privilege. (Id. (objection 5).)

## II. ANALYSIS

### A. Standard of Review

This court reviews orders issued by Magistrate Judges in non-dispositive motions for clear error and rulings contrary to law. Fed. R. Civ. P. 72(a). "[U]nless the result compelled by the Magistrate Judge's ruling is contrary to law or clearly erroneous, the Order[] of the Magistrate Judge will be affirmed." Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1211, 1213 (M.D.N.C. 1996). The "contrary to law" standard of review "permits plenary review of legal conclusions." Stonecrest Partners, LLC v. Bank of Hampton Roads, 770 F. Supp. 2d 778, 782 (E.D.N.C. 2011) (citing PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010)); United States v. Duke Energy Corp., 1:00CV1262, 2012 WL

8

1565228, at *1-2 (M.D.N.C. Apr. 30, 2012). Magistrate Judges are generally afforded great deference in discovery rulings, yet this is partly due to the "fact-specific character of most discovery disputes." In re Outsidewall Tire Litig., 267 F.R.D. 466, 470 (E.D. Va. 2010). Here, although counsel for the League Plaintiffs argues otherwise,[2] the Magistrate Judge has yet to apply her ruling to any specific document or category of documents, ruling only that the legislative privilege is qualified rather than absolute. Thus, unlike most discovery disputes, the legislators' objections as to the scope of the privilege (at least at this stage) present pure questions of law, rather than an application of law to complex facts, requiring this court's *de novo* review.

**B. Scope of the Magistrate Judge's Order**

The Order holds only that legislative immunity and privilege do not shield the legislators entirely from the burden of responding to these subpoenas:

> Specifically, the Court concludes that while the judicially-created doctrine of 'legislative immunity' provides individual legislators with absolute immunity from liability for their legislative acts, that immunity does not preclude all discovery in the

---

[2] At the hearing, counsel pointed to the Order's language that "many of the documents requested by the subpoenas and discovery requests involved communications with outside parties or are other documents that are considered public records" and noting that "[r]equiring production of those documents is not unduly burdensome or invasive of the legislative process." (Doc. 79 at 7.) In contrast, counsel for the NAACP Plaintiffs conceded that no motion had yet to be ruled on.

9

> context of this case; instead, claims of legislative
> immunity or privilege in the discovery context must be
> evaluated under a flexible approach that considers the
> need for the information in the context of the
> particular suit presented, while still protecting
> legislative sovereignty and minimizing any direct
> intrusion into the legislative process.

(Doc. 79 at 3.) In light of this conclusion, the Order directed the parties to meet and confer in an attempt to narrow their dispute before reporting back to the court. (Id. at 7.) The limited nature of the Magistrate Judge's holding and the specific objections by the legislators narrow the scope of this court's review.

### C. First Group of Objections

In the first three objections, the legislators contend that an absolute legislative immunity or legislative privilege applies in this case. (See Doc. 83 at 14-15.) Thus, the legislators contend that under Supreme Court and Fourth Circuit precedent they have no obligation to respond to the subpoenas. Plaintiffs contend that the Magistrate Judge's Order "strikes the proper balance between claims of legislative privilege and documents that are not subject to the privilege." (Doc. 88 at 6.)

Broad legislative immunity is guaranteed federal legislators by the Speech or Debate Clause of the United States Constitution. U.S. Const. art. I, § 6, cl. 1 (providing that Members of Congress "shall not be questioned in any other Place"

10

as to "any Speech or Debate in either House"). The Constitution does not provide such immunity to state legislators. See United States v. Gillock, 445 U.S. 360, 374 (1980). Yet, the Supreme Court extended them immunity from civil suit through the federal common law in Tenney v. Brandhove, 341 U.S. 367, 372-76 (1951). See EEOC v. Wash. Suburban Sanitary Comm'n, 631 F.3d 174, 180-81 (4th Cir. 2011). Consequently, legislative immunity shields state legislators from civil suit when they act within the "sphere of legitimate legislative activity." Tenney, 341 U.S. at 376.

Insofar as the Speech or Debate Clause does not reach state legislators, the parties concede that the issue before this court in this federal-question case is a matter of federal common law. To the extent the issue is one of legislative privilege, its application falls under Federal Rule of Evidence 501. See Favors v. Cuomo, 285 F.R.D. 187, 209 (E.D.N.Y. 2012); Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections, No. 11 C 5065, 2011 WL 4837508, at *5 & n.8 (N.D. Ill. Oct. 12, 2011) (three-judge panel). "Legislative privilege is related to, but distinct from, the concept of legislative immunity." Favors, 285 F.R.D. at 209; see also EEOC v. Wash. Suburban Sanitary Comm'n, 666 F. Supp. 2d 526, 531 (D. Md. 2009), aff'd by 631 F.3d 174 (4th Cir. 2011) ("[L]egislative privilege is a derivative of legislative immunity.").

11

The legislators contend that they enjoy absolute protection from inquiry into their actions, equivalent to that under the Speech or Debate Clause, but concede that no Supreme Court case so holds. They rely heavily on Tenney. In that case, the Supreme Court held that the federal common law extends immunity from civil suit under 42 U.S.C. § 1983 to a state legislator acting in his legislative capacity. 341 U.S. at 379. While the Court itself referred to legislative immunity as "the privilege" on several occasions, it is clear that only immunity from *suit*, rather than immunity from *discovery*, was at issue. Indeed, that is how the Supreme Court in Gillock later characterized the case. 445 U.S. at 371 ("The issue [in Tenney], however, was whether state legislators were immune from civil suits for alleged violations of civil rights under 42 U.S.C. § 1983.").

In Gillock, a state legislator was indicted in federal court on charges of bribery and racketeering. Id. at 362. He sought to prevent the Government from introducing evidence of his legislative acts at trial. Id. The Court ruled against him, holding that any evidentiary privilege he enjoyed as a state legislator under the federal common law does not apply to criminal cases. Id. at 373-74.

The legislators contend that their immunity is co-extensive with the federal immunity because both arose from the common law. In this regard, it is noteworthy that the Court in Gillock

12

rejected extending the rationale of the Speech or Debate Clause
to state legislators.[3]  Specifically, the Court noted that two
principles undergird the Clause: separation of powers and
comity.  See id. at 370-72.  As to the former, the Court
concluded it "gives no support to the grant of a privilege to
state legislators in federal criminal prosecutions."  Id. at
370.  As to the latter, it concluded "that although principles
of comity command careful consideration, our cases disclose that
where important federal interests are at stake, as in the
enforcement of federal criminal statutes, comity yields."  Id.
at 373.

The parties have not cited any Supreme Court case since
Gillock that has clarified the scope of the federal common law
privilege.[4]  Rather, the cases relied on by the legislators[5]

_____

[3] Indeed, the Court stated "[i]t is clear that were we to recognize an
evidentiary privilege similar in scope to the Federal Speech or Debate
Clause, much of the evidence at issue here would be inadmissible."
Id. at 366.

[4] The United States contends that Gillock applies to cases brought
under Section 2 of the VRA because "important federal interests" are
at stake in cases such as these.  (Doc. 86 at 8 n.4 (citing Gillock,
445 U.S. at 373).)  However, Gillock's holding is confined to criminal
cases, and any suggestion otherwise is dicta.  The United States has
cited no case which held or suggested that the legislative privilege
does not apply in cases brought under the VRA.

[5] See, e.g., Eastland v. U.S. Servicemen's Fund, 421 U.S. 491, 507
(1975) (holding that federal legislators are absolutely immune from
suit for their issuance of a subpoena duces tecum to a private
organization – an act that is a legitimate legislative activity);
Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 420 (D.C.
Cir. 1995) (holding that documents in the possession of federal

13

apply the Speech or Debate Clause protections enjoyed by Members of Congress. Even Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252 (1977), relied on by Plaintiffs, is not on point. There, the court reversed a lower court's finding of discrimination against a village in a Chicago suburb because the plaintiffs had failed to prove discriminatory intent on the part of the governmental body. Id. at 270-71. In so doing, the court, in examining "subjects of proper inquiry," noted that "in some extraordinary instances the members [of the governmental body] might be called to the stand a trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." Id. at 268 (citing Tenney). In a footnote, the Court observed that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government" and that "[p]lacing a decision-maker on the stand is therefore 'usually to be avoided.'" Id. at n.18 (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971)).[6] Arlington Heights,

legislators relating to legislative acts were protected by a privilege of nondisclosure in a civil case). Contrary to the legislators' arguments, Eastland involved the scope of legislators' civil liability for the act of issuing a subpoena duces tecum, not an evidentiary privilege of nondisclosure.

[6] The Fourth Circuit later relied upon Arlington Heights in stating that one method of proving discriminatory intent in Equal Protection

Case 1:13-cv-00658-TDS-JEP   Document 105   Filed 05/15/14   Page 14 of 28

however, was not a case about the scope of the legislative privilege. It held only that in that specific case the plaintiffs had not proven discriminatory intent as required by Washington v. Davis, 426 U.S. 229 (1976). Thus, the Court had no occasion to consider in what circumstances state or local legislators may be compelled to testify or produce documents concerning their legislative activities.

The legislators place heavy emphasis on Fourth Circuit precedent, including Washington Suburban. There, the United States Equal Employment Opportunity Commission ("EEOC") was investigating the Washington Suburban Sanitary Commission ("WSSC") – a bi-county governmental body – for possible age discrimination under federal law. 631 F.3d at 176–177. The WSSC had decided to restructure its IT department, eliminating some older positions. Id. at 177–78. The EEOC initially subpoenaed a variety of documents: documents relating to the WSSC's internal deliberations; and others that included employee files, prior age discrimination complaints, tests used in making employment decisions, the names of people terminated because of restructuring and those who applied for post-restructuring positions, and documents referring to training procedures and

cases is by using "contemporary statements by decisionmakers on the record or in minutes of their meetings." Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 819 (4th Cir. 1995).

job descriptions in the department. Id. at 179. The WSSC responded by asserting legislative immunity and privilege. The EEOC eventually dropped its demand for records relating to the WSSC's internal deliberations. Id. As the court observed, "the district court ruled that while legislative privilege might in theory defeat the EEOC's subpoena power, the EEOC's modified subpoena asked for information about discrimination prior to and after the legislative restructuring decision, not for information about the decision to restructure itself." Id. The district court therefore ordered compliance.

The Fourth Circuit's opinion is expansive in its discussion of legislative immunity and privilege. The court acknowledged that legislative privilege is "an accepted evidentiary privilege[]" that is a "parallel concept of legislative immunity." Id. at 180. It also traced the origins of legislative immunity *from suit*, which applies to state legislators after Tenney, noting that its "practical import is difficult to overstate." Id. at 181. Immunity protects legislators from "the costs and distractions attending lawsuits," "shields them from political wars of attrition," and "prevent[s] the threat of liability" from deterring public service. Id. (internal quotation marks omitted).

Legislative privilege, on the other hand, protects "against compulsory evidentiary process . . . to safeguard this

16

immunity." Id. This privilege applies even if the legislators are not named in the suit. Id. (citing MINPECO, S.A. v. Conticommodity Servs., Inc., 844 F.2d 856, 859 (D.C. Cir. 1988) (noting that "[d]iscovery procedures can prove just as intrusive" as being named a party to litigation)). The court predicted that "if the EEOC or private plaintiffs sought to compel information from legislative actors about their legislative activities, they would not need to comply." Id.

Turning to the modified subpoenas, the court allowed discovery of what the EEOC ultimately sought because, rather than seeking discovery of the motives behind the restructuring, the subpoena "skirt[ed] these potentially intrusive topics and focus[ed] on evidence likely regarding unprivileged administrative personnel decisions." Id. at 183. According to the court, the EEOC's withdrawal of its requests for "any investigation into the motives underlying the decision to restructure" avoided bringing it "impermissibly close to privileged materials regarding the . . . Commissioners' reasons for approving the proposed restructuring and the county council members' reasons for approving [the WSSC's] budget, a 'quintessentially legislative' act." Id. (quoting Bogan v. Scott-Harris, 523 U.S. 44, 55 (1998)). Thus, after describing at some length the broad parameters of the privilege, the court necessarily avoided application of the privilege to any inquiry

17

into legislative motive, finding it "premature" to do so simply because a "legitimate claim of privilege might ripen at some point down the road."[7]  Id. at 182-83.

The legislators also rely on Schlitz v. Commonwealth of Virginia, 854 F.2d 43 (4th Cir. 1988).[8]  There, a judge sued the Commonwealth of Virginia, among others, for federal age discrimination based on the General Assembly's failure to re-elect him to a judgeship.  Id. at 43-44.  The Fourth Circuit reversed the district court, concluding that summary judgment should have been granted to the defendants because of legislative immunity.  Id. at 44, 46.  Notably, the court stated that "[w]here, as here, the suit would require the legislators to testify regarding conduct in their legislative capacity, the doctrine of legislative immunity has full force."  Id. at 45.

---

[7] McCray v. Maryland Department of Transportation, 741 F.3d 480, 484-87 (4th Cir. 2014), also relied on by the legislators, is unhelpful. That case concerned immunity from suit and not the application of an evidentiary privilege.  Moreover, it held legislative immunity inapplicable because the discriminatory acts alleged occurred before any legislative activity.  Id. at 487.

[8] Schlitz was overruled in part by Berkley v. Common Council of City of Charleston, 63 F.3d 295 (4th Cir. 1995) (en banc).  In Berkley, the Fourth Circuit sitting en banc held that the City of Charleston was not immune from suit under section 1983.  Id. at 302.  The court stated that "[t]o the extent that [Schlitz] can be read to confer legislative immunity on municipalities from suits brought under section 1983, [it is] overruled."  Id. at 303.  In a footnote, the court clarified that under Schlitz, the Charleston councilmembers "may be privileged from testifying in federal district court as to their motives in enacting legislation."  Id. at n.9.  However, the court declined to address the privilege in its holding.  Id.

18

It also observed that the Supreme Court has "extended the protection in the speech [or] debate clause . . . to state legislators." Id. The legislators argue that this language acknowledges that the broad immunity they enjoy is co-extensive with the federal legislators' immunity. To this end, they note, the court rejected what it construed as the judge's attempt to "circumvent the doctrine of legislative immunity by declining to name as defendants individual legislators." Id. at 46. "The purpose of the doctrine," the court concluded, "is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves." Id. (citing Gravel v. United States, 408 U.S. 606, 616 (1972) (federal legislative immunity)).

The legislators also argue that the Magistrate Judge's reliance upon Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292 (D. Md. 1992), was misplaced. Marylanders was a redistricting case brought under the VRA and heard before a three-judge panel pursuant to 28 U.S.C. § 2284; it is therefore not binding on this court. It is nevertheless persuasive authority. In that case, the Governor of Maryland convened a five-member committee consisting of the Speaker of the House of Delegates, the President of the State Senate, and three private citizens, to advise him on creating a plan for redistricting after the 1990 federal census. Id. at 296

19

(opinion of Smalkin, District Judge).  Under Maryland law, the Governor was required to propose a redistricting plan which would be submitted to the State legislature.  Id. at 295.  The legislature could then propose its own plan or do nothing; if it failed to act, the Governor's plan would become law in 45 days. Id.  After the committee recommended a plan to the Governor, he made minor changes and submitted it to the legislature.  Id. at 296.  The legislature failed to act, and the plan became law. Id.

The plaintiffs sought to depose the members of the committee, including the two state legislators, and inquire into the committee's motives.  Id. at 295.  The concurring opinion of Circuit Judge Murnaghan and District Judge Motz provided the majority on the issue of legislative privilege.  Id. at 301 n.19.  That opinion stated:

> The doctrine of legislative immunity (both in its substantive and testimonial aspects) itself embodies fundamental public policy.  It insulates legislators from liability for their official acts and shields them from judicial scrutiny into their deliberative processes.  The doctrine is a bulwark in upholding the separation of powers.  It does not, however, necessarily prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated an overriding, free-standing public policy.

Id. at 304 (opinion of Judges Murnaghan and Motz) (footnote omitted).  Because of the "unique nature of legislative redistricting and the fact that testimonial legislative immunity

20

is not an absolute," the judges stated, they would permit the deposition of the three private-citizen members of the committee. Id. at 304–05. The decision was based in part on the fact that the composition of the committee would allow discovery of information sought through the private citizens "without directly impacting upon legislative sovereignty." Id. at 305. The court deferred ruling on whether the legislators could be deposed in their capacity as committee members, but Judges Murnaghan and Motz forecasted: "We too . . . would flatly prohibit their depositions from being taken as to any action which they took after the redistricting legislation reached the floor of the [legislature] as President of the Senate and Speaker of the House, respectively (unless they ultimately are listed by the Defendants as trial witnesses) because of the direct intrusion of such discovery into the legislative process." Id.

Thus, while Marylanders determined that legislative privilege is not absolute, it did not ultimately allow any testimony of the legislators. Instead, in respect for the sovereignty of the legislature, the court permitted the deposition of the private citizens on the committee as it appeared that the same information was available from them. In other words, where the evidence was discoverable from a non-

21

legislator source, the Marylanders court required the plaintiffs
to pursue that before seeking to impinge upon the privilege.[9]

Other district courts have also concluded that the
privilege is not absolute. For example, the three-judge panel[10]
in Fair and Balanced Map considered a motion to compel a
response to subpoenas duces tecum served upon Illinois state
legislators in a redistricting case under the VRA and Fourteenth
and Fifteenth Amendments. 2011 WL 4837508, at *1-2. After
recognizing that federal common law controlled the case, the
court stated that the legislative privilege "protects
[legislators] from producing documents in certain cases." Id.
at *7. It concluded that "legislative privilege is qualified,
not absolute, and may be overcome by a showing of need." Id.
(citing In re Grand Jury, 821 F.2d 946, 958 (3d Cir. 1987)).[11]

---

[9] The court suggested that certain documents would be discoverable
from the committee, yet that issue does not appear to have been
squarely before it. See id. at 302 n.20 (opinion of Smalkin, District
Judge).

[10] The Westlaw version of this opinion indicates it was written by
Judge John Daniel Tinder as District Judge. Judge Tinder is a circuit
judge. The case was heard before a three-judge panel including Judge
Tinder of the Seventh Circuit, Judge Robert L. Miller of the Northern
District of Indiana, and Senior Judge Joan Humphrey Lefkow of the
Northern District of Illinois.

[11] In assessing need, many courts have applied a five-factor balancing
test:

> (i) the relevance of the evidence sought to be protected;
> (ii) the availability of other evidence; (iii) the
> seriousness of the litigation and the issues involved; (iv)
> the role of the government in the litigation; and (v) the

Nevertheless, "disclosure of confidential documents concerning intimate legislative activities should be avoided." <u>Id.</u> at *9.

Based on these cases, it is apparent that state legislators enjoy broad immunity *from suit* under the federal common law. It is also apparent that they enjoy a legislative privilege that includes protection from testifying "for actions taken within the 'sphere of legitimate legislative activity.'" <u>Schlitz</u>, 854 F.2d at 45 (quoting <u>Tenney</u>, 341 U.S. at 376); <u>Marylanders</u>, 144 F.R.D. at 305 (opinion of Murnaghan, Circuit Judge, and Motz, District Judge) (finding that depositions of state legislators would be improper "as to any action which they took after the redistricting legislation reached the floor of the General Assembly"); <u>Florida v. United States</u>, 886 F. Supp. 2d 1301, 1304 (N.D. Fla. 2012) (holding that state legislators in a case

---

> possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

<u>Id.</u> at *7; <u>Favors</u>, 285 F.R.D. at 209–10; <u>Rodriguez v. Pataki</u>, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003); <u>Veasey v. Perry</u>, Civ. A. No. 2:13-CV-193, 2014 WL 1340077, at *2 (S.D. Tex. Apr. 3, 2014); <u>Perez v. Perry</u>, Civ. No. SA-11-CV-360-OLG, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (three-judge panel); <u>Page v. Va. State Bd. of Elections</u>, Civ. A. No. 3:13CV678, 2014 WL 1873267, at *7 (E.D. Va. May 8, 2014).

Some courts have compared the legislative privilege to, or even defined the privilege as, a "deliberative process privilege." <u>E.g.</u>, <u>Doe v. Nebraska</u>, 788 F. Supp. 2d 975, 984 (D. Neb. 2011), <u>adopted by</u> 2011 WL 2413359 (D. Neb. June 15, 2011) (noting that it protects pre-enactment communications between legislators containing opinions, advice, or recommendations about legislative actions). The current record and objections do not require the court to define the parameters of the deliberative process privilege.

brought under Section 5 of the VRA were privileged from testifying regarding the "reasons for their votes"); <u>Backus v. South Carolina</u>, Case No. 3:11-cv-03120-HFF-PMD, Order (D.S.C. Feb. 8, 2012) (quashing notice of deposition as to "any questions concerning communications or deliberations involving legislators or their agents regarding their motives in enacting legislation").[12]

The present dispute involves the production of documents, not testimony.[13] The Supreme Court has not addressed the scope of the privilege as applied to requests for documents in a civil case. The decisions of the Fourth Circuit, while highly protective of the privilege, also do not provide controlling guidance.[14] To be sure, the legislative privilege, being an

---

[12] Plaintiffs noted at the hearing that they have noticed the depositions of certain legislators but have agreed to await this court's ruling before proceeding further.

[13] Some district courts have concluded that compulsory production of documents may be less burdensome than requiring legislators to testify. <u>See, e.g.</u>, <u>Doe</u>, 788 F. Supp. 2d at 984 ("[S]tate and local officials may be protected from testifying, but are not necessarily exempted from producing documents."). On the other hand, some courts applying the Speech or Debate Clause have protected document production to the same extent as testimony. <u>See</u> <u>Brown & Williamson</u>, 62 F.3d at 420 ("We do not accept the proposition that the testimonial immunity of the Speech or Debate Clause only applies when Members or their aides are personally questioned. Documentary evidence can certainly be as revealing as oral communications – even if only indirectly when, as here, the documents in question . . . do not detail specific congressional actions.").

[14] Some courts have indicated that the privilege must be strictly construed because, like all privileges, it prevents the use of potentially relevant evidence. <u>See</u> <u>Favors</u>, 285 F.R.D. at 209; <u>Fair &</u>

evidentiary one, applies to a legislator's documents relating to legitimate legislative activity.  As with other privileges, the court cannot say that it is absolute.  <u>See</u> <u>Marylanders</u>, 144 F.R.D. at 304.  It follows, therefore, that the court cannot say that the Magistrate Judge's Order is contrary to law, and the legislators' first group of objections is overruled.

This is the extent of the narrow question before the court at this time.  Therefore, the parties should resume their effort to meet and confer to attempt to comply with the Order, consistent with this Memorandum Order.  Whether Plaintiffs' requests seek a document or group of documents that implicates the legislative privilege will be for the Magistrate Judge to determine, keeping in mind the relevant authorities, the purpose of the legislative privilege, evidence that the legislators' compliance would divert them from their legislative duties and/or impose an impermissible burden upon them, and the possibility of waiver as to any document, among other things.[15]

---

<u>Balanced Map</u>, 2011 WL 4837508, at *7.  These courts have cited <u>Trammel v. United States</u>, 445 U.S. 40, 50 (1980), which concerned the spousal testimonial privilege.  In contrast, Fourth Circuit opinions have often described the legislative privilege as one that is broadly construed.  <u>See, e.g.</u>, <u>Wash. Suburban</u>, 631 F.3d at 180-84; <u>Schlitz</u>, 854 F.2d at 45-46.

[15] For example, at the hearing the legislators acknowledged that some documents over which they assert legislative privilege were published on the State Board of Elections website for approximately a year, raising the issue whether any privilege has been waived as to those documents.

25

See <u>Wash. Suburban</u>, 631 F.3d at 182.

**D. Other Objections**

The legislators object to the following statement in the Magistrate Judge's Order: "During the hearing on February 21, 2014, Defendants acknowledged that this 'carve out' [allowing some discovery of legislators] would allow 'more leeway' in discovery as to legislative motive in cases involving redistricting claims." (Doc. 79 at 5 n.1.) The legislators argue neither they nor Defendants have conceded any exception to the legislative privilege in redistricting cases.

The court accepts that the legislators say they have not conceded that an exception exists, and the objection is sustained to this extent. As discussed above, however, the holding in <u>Marylanders</u> was limited to compelling the testimony of the non-legislator members of the Governor's committee. Thus, discussion of any so-called VRA exception to the privilege was not necessary to its holding. To be sure, other redistricting cases have applied a qualified privilege in the VRA context, considering the nature of the claims involved as one of the factors of the balancing test. <u>See, e.g.</u>, <u>Fair & Balanced Map</u>, 2011 WL 4837508, at *7; <u>Perez</u>, 2014 WL 106927, at *2.

Finally, the legislators object to the Magistrate Judge's setting of a deadline by which Defendants are to notify

26

Plaintiffs of the identity of any legislator on whom they will rely insofar as the information otherwise would have been subject to legislative privilege. (Doc. 83 at 3, 19-20.) The purpose of this portion of the Order is merely to require that Defendants provide Plaintiffs fair notice so discovery of those legislators can occur prior to any upcoming proceeding. The legislators acknowledge this, but they object to the extent the Order may be construed to prohibit any waiver "done solely for the purpose of offering rebuttal evidence." (<u>Id.</u> at 20.)

Notably, Defendants, who are the *parties* bound by the Order, have not objected to this portion of the Order, and the court is hard pressed to discern the standing of the legislators to object to this scheduling aspect of the Order. In any event, should the Defendants anticipate relying on any legislator's testimony, they should timely disclose it. Should Defendants disclose any legislator's testimony only for claimed rebuttal purposes, the court will consider the reasonableness of that assertion in light of the record and determine whether, if the testimony is allowed, additional discovery will be permitted. Therefore, the objection is overruled.

## III. CONCLUSION

For the reasons set forth above,

IT IS THEREFORE ORDERED that the legislators' objections (Doc. 83) are SUSTAINED IN PART AND OVERRULED IN PART.

27

IT IS FURTHER ORDERED that the parties meet and confer forthwith, as directed by the Magistrate Judge's Order, and file their report (previously set for April 7) on or before May 22, 2014, presenting any remaining disputes with respect to particular categories and types of documents for further resolution by the court.

IT IS FURTHER ORDERED that the Order's deadline of April 14 is reset to noon on May 19, 2014, by which Defendants must notify Plaintiffs of the identity of any legislator on whom they intend to rely in response to any preliminary injunction motion, whether by affidavit, testimony, or documentary evidence otherwise subject to the legislative privilege, in order to allow Plaintiffs sufficient time to undertake additional discovery with respect to those legislators.

                                      /s/   Thomas D. Schroeder
                                 United States District Judge

May 15, 2014