IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., ) ) ) | | |
| Plaintiffs, ) ) | | |
| v. ) ) | 1:13CV658 | |
| PATRICK LLOYD MCCRORY, in his official capacity as Governor of North Carolina, et al., ) ) ) | | |
| Defendants. ) ) | | |

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, et al., ) ) ) | | |
| Plaintiffs, ) ) | | |
| v. ) ) | 1:13CV660 | |
| THE STATE OF NORTH CAROLINA, et al., ) ) ) | | |
| Defendants. ) ) | | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ) ) | | |
| Plaintiff, ) ) | | |
| v. ) ) | 1:13CV861 | |
| THE STATE OF NORTH CAROLINA, et al., ) ) ) | | |
| Defendants. ) ) | | |

ORDER

These cases come before the Court for resolution of an ongoing discovery dispute regarding the application of legislative privilege to certain of Plaintiffs' document production

requests on Defendants and Plaintiffs' subpoenas *duces tecum* on various North Carolina state legislators. For the reasons that follow, the Court concludes that legislative privilege does not preclude production of communications between legislators and third parties. In addition, the Court concludes that legislative privilege does not preclude creation of a privilege log for communications between legislators and outside counsel prior to the commencement of this litigation, if those communications are withheld based on a claimed privilege. However, in light of the protections afforded by the doctrine of legislative privilege, the Court will decline to order the production of, or the creation of a privilege log regarding, communications solely among legislators or between legislators and legislative staff, and any subpoena or request for production of such internal communications will be quashed.

I. PROCEDURAL HISTORY

This matter arises in three consolidated cases involving claims by the North Carolina State Conference of the NAACP and other individuals and churches, the League of Women Voters of North Carolina and other individuals and groups, and the United States of America (collectively, "Plaintiffs") against the State of North Carolina, the members or director of the State Board of Elections, and/or North Carolina Governor Patrick McCrory, challenging portions of North Carolina legislation (referred to as "House Bill 589") pursuant to the federal Voting Rights Act, 42 U.S.C. § 1973 and § 1973a, and the Fourteenth and Fifteenth Amendments. After discovery began, Plaintiffs served production requests on Defendants and served subpoenas on certain non-party state legislators requesting, inter alia, communications by the state legislators regarding House Bill 589 and any other proposed

2

election law reforms. In response to these discovery requests, Defendants objected on the basis of legislative immunity and legislative privilege, and Plaintiffs filed a Motion to Compel. The state legislators also filed a Motion to Quash the subpoenas based on legislative immunity or legislative privilege. Following a hearing on this issue, the undersigned issued an Order rejecting the contention that legislative privilege barred all discovery into the legislators' communications. Rather, the undersigned adopted "a flexible approach that considers the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process." (March 27, 2014 Order [Doc. #94] at 9.)[1]

Defendants objected to that Order, and those objections were subsequently overruled by the United States District Judge. (May 15, 2014 Order [Doc. #105] at 25.) The District Judge observed that the Supreme Court has not addressed the scope of the legislative privilege as applied to requests for documents in a civil case, and that "decisions of the Fourth Circuit, while highly protective of the privilege, also do not provide controlling guidance." (Id. at 24.) However, based on a review of relevant authority, the District Judge concluded that "[a]s with other privileges, the court cannot say that [the legislative privilege] is absolute." (Id. at 25.) Accordingly, the parties were ordered to meet and confer and "file [a] report . . . presenting any remaining disputes with particular categories and types of documents for further resolution by the court." (Id. at 28.) The District Judge directed that any future determinations of proper application of the privilege "keep[] in mind the relevant authorities, the purposes of the legislative privilege, evidence that the legislators' compliance would divert them from their

---

[1] All citations to the docket refer to the docket as it appears in Case No. 1:13CV658.

3

legislative duties and/or impose an impermissible burden upon them, and the possibility of waiver as to any document, among other things." (Id. at 25.)

The Parties subsequently filed a Joint Status Report indicating that Defendants agreed to produce documents in the custody of any state agency reflecting communications with any state legislator or legislative staff, and that Plaintiffs agreed not to seek communications solely between legislators and their attorneys created after this litigation began, or communications solely between a legislator and his or her personal aide. (See Joint Status Report [Doc. #126] at 3-4.) However, the Parties remained unable to agree on the application of legislative privilege as to four categories of documents. (See id. at 4-5.) Specifically, Plaintiffs seek, and Defendants and the state legislators resist, discovery regarding: (1) communications between legislators and third parties such as constituents, lobbyists, and public interest groups; (2) communications solely among legislators; (3) communications between legislators and legislative staff; and (4) communications between legislators and outside counsel prior to the commencement of this litigation. In light of their ongoing disagreement, the Parties requested the opportunity to further brief the legislative privilege issue. (Id.)

Defendants and the legislators, the United States, and the NAACP and League Plaintiffs filed briefs setting forth their positions on the application of legislative privilege to the disputed categories of documents. [Doc. #133, #134, #135.] Each of those groups subsequently filed responses. [Doc. #150, #152, #153.] The discovery dispute was effectively stayed while the Parties separately litigated Plaintiffs' request for a preliminary injunction, and the undersigned subsequently held a telephonic status conference on

4

November 7, 2014, to address discovery matters and scheduling, and to allow the Parties the opportunity to address the pending discovery dispute in light of subsequent proceedings and developments in this case. This matter is now ripe for consideration.

II. ANALYSIS

As an initial matter, the Court notes that the Parties have not presented any basis to revisit the conclusions reached in the prior Orders addressing legislative privilege. Thus, the Court concludes now, as it did previously, that legislative privilege is not absolute, but rather requires "a flexible approach that considers the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process." (March 27, 2014 Order [Doc. #94] at 9.) In assessing the need for the information under this flexible approach, "many courts have applied a five-factor balancing test:

(i) the relevance of the evidence sought to be protected;

(ii) the availability of other evidence;

(iii) the seriousness of the litigation and the issues involved;

(iv) the role of the government in the litigation; and

(v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."

(May 15, 2014 Order [Doc. #105] at 25 n.11 (quoting Committee for a Fair and Balanced Map v. Ill. State Bd. of Elections, No. 11 C 5065, 2011 WL 4837508 at *7 (N.D. Ill. Oct. 12, 2011)).)

The Court can consider these factors as to each of the disputed categories of documents in this case, also taking into account "the purpose of the legislative privilege,

5

evidence that the legislator's compliance would divert them from their legislative duties and/or impose an impermissible burden upon them, and the possibility of waiver as to any document." (Id.)

In undertaking this analysis, the Court notes that many of the relevant factors apply generally across the disputed categories of documents. For example, with respect to the relevance of the evidence sought to be protected, Defendants contend that the requested documents are not relevant. However, nothing Defendants offer suggests that the documents sought are irrelevant in the discovery context in this case. Indeed, pertinent authority suggests that legislator communications may be relevant both to motive and to providing context for legislative actions. See, e.g., Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 268 (1977) (providing that "[t]he legislative or administrative history may be highly relevant, especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports" and "[i]n some extraordinary instances the members [of a legislative body] might be called to the stand at trial to testify concerning the purpose of the official action"); South Carolina Educ. Ass'n v. Campbell, 883 F.2d 1251, 1259 & n.6 (4th Cir. 1989) (recognizing that judicial inquiry into legislative motive is appropriate where "the very nature of the constitutional question requires an inquiry into legislative purpose"); see also Marylanders for Fair Representation, Inc. v. Schaefer, 144 F.R.D. 292, 304 (D. Md. 1992) (opinion of Judges Murnaghan and Motz) (noting that legislative privilege "does not, however, necessarily prohibit judicial inquiry into legislative motive where the challenged legislative action is alleged to have violated an

6

overriding, free-standing public policy."). Defendants contend that Arlington Heights, and the Fourth Circuit decision in Sylvia Development Corporation v. Calvert County, 48 F.3d 810, 819 (4th Cir. 1995), which cites Arlington Heights, suggest that the legislative record alone is all the evidence relevant to Plaintiffs' claims. However, Plaintiffs note that in Voting Rights Act cases, courts often look to legislative evidence outside the formal legislative record.[2] (See United States' Response [Doc. #152] at 3-6.) Moreover, in the discovery context, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Besides addressing motive and offering context for legislative history, the communications at issue are, at the very least, reasonably calculated to lead to admissible evidence regarding the same.

With respect to the second factor, the availability of other evidence, Defendants have not shown that the requested documents are available elsewhere, nor have Defendants otherwise provided a viable alternative for obtaining the documents from other sources. With respect to the seriousness of the litigation and the issues involved, there is no question that the present litigation involves serious and important questions affecting the constitutional rights of North Carolinians and the integrity of North Carolina elections. Cf. Page v. Virginia State Bd. of Elections, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014) ("The right to vote and the rights conferred by the Equal Protection Clause are of cardinal importance. And, there is no dispute over the seriousness of the Plaintiffs' claims."). With respect to the role of the

---

[2] Indeed, in considering the request for a preliminary injunction in this case, the District Court and the Fourth Circuit cited to emails between various sponsors of House Bill 589 and the North Carolina State Board of Elections. The citations to these emails offer at least some suggestion that the requested legislative communications are potentially relevant. (See, e.g., Aug. 8, 2014 Ord. [Doc. #184] at 59-61; Oct. 10, 2014 Opinion [Doc. #199] at 9-10, 13.)

7

Case 1:13-cv-00658-TDS-JEP   Document 207   Filed 11/20/14   Page 7 of 15

government in the litigation, the government is directly involved in the litigation, in the alleged constitutional violations, and in any potential remedy that is sought.

In light of these general conclusions, the Court will further consider the various factors as to the following four disputed categories of documents: (1) communications between legislators and third parties; (2) communications solely among legislators; (3) communications between legislators and legislative staff; and (4) legislator communications with outside counsel prior to the commencement of litigation on August 12, 2013. Plaintiffs seek production of the first category of documents (i.e., legislator to third party communications) and a privilege log as to the remaining three categories. Defendants and the state legislators seek to restrict disclosure of all categories of documents and further argue that application of the privilege is so clear that the documents at issue are not subject to a privilege log requirement.[3]

A. Communications between Legislators and Third Parties

With respect to communications between legislators and third parties, such communications are not ordinarily the type of legislative acts that the privilege is designed to protect. See E.E.O.C. v. Washington Suburban Sanitary Comm'n, 631 F.3d 174, 184 (4th Cir. 2011) ("Legislative acts, the ones for which the immunity and privilege are granted, typically involve the adoption of prospective, legislative-type rules, rules that establish a general policy affecting the larger population. They also generally bear the outward marks of public

---

[3] The Parties have not raised any distinctions between documents sought from Defendants in discovery requests and documents sought from non-party legislators by subpoena. The Court therefore addresses legislative privilege issues raised in either context, whether by Motion to Quash or in response to Plaintiffs' Motion to Compel.

decisionmaking, including the observance of formal legislative procedures." (internal quotation marks, citations, and alterations omitted)); Almonte v. Long Beach, No. CV 04-4192, 2005 WL 1796118 at *3 (E.D.N.Y. July 27, 2005) ("Legislative and executive officials are certainly free to consult with political operatives or any others as they please, and there is nothing inherently improper in doing so, but that does not render such consultation part of the legislative process or the basis on which to invoke privilege.").

Moreover, even to the extent such communications can be argued to encompass the type of legislative acts protected by the legislative privilege, that privilege was waived when the communications were shared with non-legislative outside parties. See Alexander v. Holden, 66 F.3d 62, 68 n.4 (4th Cir. 1995) (quoting Marylanders for Fair Representation v. Schaefer, 144 F.R.D. 292, 198 (D. Md. 1992), for the proposition that legislative privilege "'is a personal one and may be waived or asserted by each individual legislator'"); see also Perez v. Perry, No. SA-11-CV-360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("To the extent, however, that any legislator, legislative aide, or staff member had conversations or communications with any outsider (e.g. party representatives, non-legislators, or non-legislative staff), any privilege is waived as to the contents of those specific communications."); Favors v. Cuomo, 285 F.R.D. 187, 212 (E.D.N.Y. 2012) ("The law is clear that a legislator waives his or her legislative privilege when the legislator publicly reveals documents related to internal deliberations."); Committee for a Fair and Balanced Map, 2011 WL 4837508, at *10 ("As with any privilege, the legislative privilege can be waived when the parties holding the privilege share their communications with an outsider."); Doe v. Nebraska, 788 F. Supp. 2d 975, 987 (D. Neb.

9

2011) ("[Documents that] were communicated to or shared with non-legislative members . . . shall be produced."); Rodriguez v. Pataki, 280 F. Supp. 2d 89, 101 (S.D.N.Y. 2003) (describing, in dicta, "conversation between legislators and knowledgeable outsiders, such as lobbyists, to mark up legislation" as "a session for which no one could seriously claim privilege").

The Court is left unpersuaded by Defendants' assertion that, because the legislators communicated with third parties with an expectation of privacy, the privilege should apply. Defendants have cited no authority that the legislative privilege attaches simply because a lawmaker expected privacy in his or her communications. Indeed, such a standard would seemingly allow protection of any communication on the mere assertion of privacy by a legislator and would, in turn, convert the legislative privilege into an absolute – a position the Court has previously rejected. Moreover, the legislators' expectation of privacy itself is questionable as it relates to communications with third parties outside the legislators' control.[4] Thus, there is no basis to conclude that requiring production of the communications with third parties would result in future timidity in communications, as the possible sharing or publication of these documents would not be unexpected.

Finally, the Court concludes that Defendants have not shown that requiring production

---

[4] Not only could the third party share or publish the communication, legislators would also have reason to expect that communications with third parties may be considered public records under state law. For example, the North Carolina Attorney General's Office, by way of advisory opinion, has addressed whether communications between legislators and members of the public in the redistricting context would constitute public records. That advisory opinion noted that the North Carolina General Statutes did not provide for confidentiality of communications between a legislator and a member of the public and that "the courts ordinarily construe legislative silence with regard to the confidentiality of a record to constitute an intention by the legislature to make the record a public record." Attorney General Legal Op., 2002 WL 544469, at *1 (Feb. 14, 2002). The Advisory Opinion concluded that, absent the awareness of any countervailing rule, "written and electronic communications between a legislator and a member of the public about redistricting are generally public records." Id.

10

of these communications would impose a heavy burden on them or divert the state legislators from their duties. The Parties have indicated that all of the communications are in the possession of counsel for Defendants, and it appears that the documents can be sorted electronically by sender and recipient to retrieve and produce communications with third parties without substantially burdening the legislators. Accordingly, the Motion to Quash and discovery objections based on legislative privilege will be denied as to communications between legislators and third parties.[5]

   B. Communications Solely Among Legislators and Communications between Legislators and Legislative Staff

With respect to communications solely among legislators or communications between legislators and legislative staff, Plaintiffs seek creation of a privilege log with detailed information regarding the communications, including the participants in the communication and a description of all subjects addressed. In considering this request, the Court notes first that requiring production of communications solely among legislators raises serious concerns regarding the direct intrusion into internal legislative affairs and the potential to "inhibit full and frank deliberations" in legislative activity. Favors, 285 F.R.D. at 220; see also Committee for a Fair and Balanced Map, 2011 WL 4837508, at *7 ("[T]he court's goal [in determining whether and to what extent a lawmaker may invoke legislative privilege] is to determine whether the need for disclosure and accurate fact finding outweighs the legislature's need to act free of worry about inquiry into its deliberations." (internal quotation marks omitted)).

---

[5] During the telephonic status conference held on November 7, 2014, counsel for Defendants generally asserted that the First Amendment may also protect the legislators' communications with third parties. However, Defendants have cited no authority for this contention, and this objection has not been presented as part of the Motion to Quash or discovery objections presently before the Court.

11

These concerns also exist with respect to communications between legislators and legislative staff. Although Plaintiffs attempt to make a distinction between "personal aides" and general legislative staff, the legislative staff system established for the General Assembly provides for a centralized, nonpartisan legislative staff. Individual legislators utilize the services of the centralized legislative staff, with strict confidentiality protections under state law. N.C. Gen. Stat. § 120-130, § 120-131. In the circumstances, and based on the information presently before the Court, the Court finds no basis here to distinguish between the types of legislative staff members involved in communications with legislators. Cf. Marylanders, 144 F.R.D. at 298 ("It is the function of the government official that determines whether or not he is entitled to legislative immunity, not his title.").

To the extent Plaintiffs request only the creation of a privilege log, the Court concludes that a privilege log, particularly one containing the level of detail requested by Plaintiffs, would itself significantly intrude into the legislative sphere, and would also place a heavy burden on the legislators in contravention of one of the aims of the legislative privilege. See Powell v. Ridge, 247 F.3d 520, 530 (3d Cir. 2011) (Roth, J., concurring) ("If legislative privilege from civil discovery exists, for either party, as in the instant case, or for a non-party as it may arise in the future, it exists to protect legislators from the burden of having to respond to discovery and of having to deal with the distractions and disruptions that discovery imposes on their ability to carry out their governmental functions."); see also Washington Suburban, 631 F.3d at 181 (noting burden as relevant factor in consideration of legislative privilege); May 15, 2014 Order [Doc. #105] at 25 (directing the Court to "keep[] in mind . . . evidence that the

12

legislators' compliance would divert them from their legislative duties and/or impose an impermissible burden upon them"). For instance, it would seem unavoidable, as Defendants note, that the creation of a privilege log would entail the extensive involvement of the legislators in order to assist in determining the context of any communications, and would require review of potentially thousands of documents. Plaintiffs have not demonstrated the value of the proposed privilege log outweighs these concerns.[6] Therefore, the Motion to Quash and corresponding discovery objections will be allowed to the extent Plaintiffs seek communications solely between legislators or solely between legislators and legislative staff, and Defendants need not create a privilege log with respect to these communications.

C. Communications between Legislators and Attorneys

Finally, with respect to communications between legislators and outside counsel prior to the commencement of litigation on August 12, 2013,[7] the Court concludes that this category of documents does not raise the same concerns regarding direct intrusion into legislative affairs, as these communications involve third parties outside the legislative process. However, Defendants are entitled to make assertions of attorney-client privilege or other claimed privilege. As in any case, production of a privilege log allows the Parties and the Court to evaluate such claims of privilege. Under these circumstances, no undue burden is

---

[6] To the extent that Plaintiffs contend that communications prior to introduction of House Bill 589 or after passage of House Bill 589 are not within the scope of privileged "legislative activity," the Court concludes that based on the information before the Court, it appears that legislative communications relevant to the present suit would be within the scope of the legislative privilege. Moreover, attempting to draw such distinctions would require substantial details, which would intrude into legislative affairs and impose a significant burden on legislators. Therefore, on balance, the possibility that there may be a communication that is relevant but not within the scope of legislative privilege does not outweigh the significant burden and intrusion involved in preparing a privilege log.

[7] Plaintiffs are not seeking the production of, or a privilege log regarding, communications between legislators and their attorneys created after August 12, 2013.

13

imposed by the creation of a privilege log, since the privilege log would be limited to a relatively small category of documents, that is, documents withheld from production because they involve communications with attorneys not employed by the legislature. Therefore, the Motion to Quash and discovery objections as to legislative communications with outside counsel prior to August 12, 2013, will be denied to the extent they are based on a blanket claim of legislative privilege, but Defendants may assert claims of privilege, including work product and attorney-client privilege, by providing a detailed privilege log claiming that privilege.

III. CONCLUSION

For the reasons set forth above, the Court concludes that communications between legislators and third parties are not ordinarily within the scope of legislative privilege, that any such privilege has been waived as to those communications, that production of such communications is not unduly burdensome, and that on balance, given the potential relevance of the documents and the importance of the issues raised in this case, the communications with third parties should be produced. However, as to purely internal legislative communications (i.e., communications solely among legislators and communications between legislators and legislative staff), the intrusion caused by creation of a privilege log and the significant burden imposed, on balance, lead the Court to conclude that legislative privilege applies and that no privilege log is required. As to communications between legislators and outside counsel prior to the commencement of this litigation on August 12, 2013, a privilege log will assist the Parties and the Court in determining whether any privilege applies, and any burden imposed by the creation of a privilege log in this context does not warrant foregoing its

creation.

IT IS THEREFORE ORDERED that, with respect to communications between legislators and third parties, the Motions to Quash and related discovery objections are DENIED, Plaintiffs' Motion to Compel is GRANTED, and Defendants must produce communications with third parties as requested by Plaintiffs.

IT IS FURTHER ORDERED that, with respect to communications between legislators and outside counsel prior to the commencement of this litigation on August 12, 2013, the Motion to Quash and discovery objections as to these requests based on a blanket claim of legislative privilege is DENIED and Plaintiffs' Motion to Compel is GRANTED to the extent that a privilege log must be prepared setting out sufficient details as to any such document withheld on the basis of privilege.

However, IT IS ORDERED that, with respect to internal legislative communications solely among North Carolina state legislators or North Carolina state legislators and legislative staff, the Motion to Quash and discovery objections based on legislative privilege are GRANTED, the Motion to Compel is DENIED, and Defendants need not produce, nor create a privilege log regarding, communications solely among legislators or communications between legislators and legislative staff.

This, the 20th day of November, 2014.

                                                    /s/ Joi Elizabeth Peake
                                                      United States Magistrate Judge