NORTH CAROLINA STATE CONFERENCE
OF THE NAACP, et al.,

        Plaintiffs,

           v.

PATRICK LLOYD MCCRORY, in his
official capacity as the
Governor of North Carolina, et
al.,

        Defendants.

1:13CV658

LEAGUE OF WOMEN VOTERS OF NORTH
CAROLINA, et al.,

        Plaintiffs,

           v.

THE STATE OF NORTH CAROLINA, et
al.,

        Defendants.

1:13CV660

UNITED STATES OF AMERICA,

        Plaintiff,

           v.

THE STATE OF NORTH CAROLINA, et
al.,

        Defendants.

1:13CV861

## MEMORANDUM ORDER

Thomas D. Schroeder, Chief District Judge.

These voting rights cases are before the court upon the Joint Motion Regarding Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. 507 in case no. 1:13CV658; Doc. 498 in case no. 1:13CV660) following the resolution of these cases in Plaintiffs' favor. See N.C. State Conference of NAACP v. McCrory, 831 F.3d 204 (4th Cir. 2016). The joint motion reflects a proposed agreement among the parties as to the separate motions for costs, attorneys' fees, and expenses filed previously by all the various Plaintiffs. See (Docs. 485-86 in case no. 1:13CV660 (League of Women Voters of North Carolina ("League"), which includes requests for the American Civil Liberties Union Voting Rights Project and American Civil Liberties Union of North Carolina (together "ACLU") and Southern Coalition for Social Justice ("SCSJ")); 487-90 in case no. 13CV660 (Duke Intervenors)); 496-499 in case no. 13CV658 (N.C. NAACP and related Plaintiffs)). The various motions are supported by the declarations of counsel, including Michael A. Glick, Penda D. Hair, Irving Joyner, Denise Lieberman, Donita Judge, Allison Riggs, Dale Ho, Ezra Rosenberg, Geraldine Sumter, and Bruce V. Spiva, and contain substantial attachments. (Docs. 496-1 through -2 in case no. 1:13CV658; Docs. 497-1 through -6 in case no. 1:13CV658; Docs. 485-1 through -4 in case no. 1:13CV660; Docs. 487-1 through -6 in case no. 1:13CV660; Docs. 488-1 through -4 in case no. 1:13CV660; Docs. 490-1 through -4 in case no. 1:13CV660.)

Altogether, there are over 1,000 pages of materials filed in support of the motions for compensation and reimbursement.

Collectively, the original applications of Plaintiffs and their counsel sought reimbursement for counsel fees totaling $5,874,970.55 (Doc. 498 at 2 in case no. 1:13CV658; Doc. 490-1 at 8 in case no. 1:13CV660; Doc. 485 at 2 in case no. 1:13CV660), expert witness fees of $712,202.57 (Doc. 498 at 3 in case no. 1:13CV658; Doc. 486 at 2 in case no. 1:13CV660; Doc. 490-1 at 11 in case no. 1:13CV660), and costs and expenses of $1,390,729.35 (Doc. 499 at 17-18 in case no. 1:13CV658; Doc. 490-2 at 42 in case no. 1:13CV660; Doc. 486 at 4, 22 in case no. 1:13CV660) for a total of $7,977,902.47.[1]  The parties report in the joint motion that, after extended negotiations, they have settled their claims and objections and have reached agreement for Defendants to pay $3,818,730.86, in attorneys' fees and $2,103,434.42 in expenses and costs, for a total award of $5,922,165.28.  (Doc. 507 at 3 in case no. 1:13CV658; Doc. 498 at 3 in case no. 1:13CV660.)  As noted below, this request does not include significant attorneys'

---

[1] The joint motion states that in their original motions Plaintiffs sought a total award of $7,978,404.97 in combined attorneys' fees, costs, and expenses.  (Doc. 507 at 2 in case no. 1:13CV658; Doc. 498 at 2 in case no. 1:13CV660.)  There is a $502.50 difference between the total award sought in the original motions as stated in the joint motion and as calculated by the court.  The majority of this discrepancy, $499.80, results from the League's calculation of expenses in its exhibits ($191,730.95), rather than the amount listed in the text of its motion ($192,230.75).  This is explained in footnote 9 infra.  It is unclear why a $2.70 difference remains.  In any event, the discrepancy does not affect the court's analysis.

3

fees reportedly incurred by outside counsel for Plaintiffs estimated to exceed $11 million. (Id.)

The court has carefully reviewed the various motions and attachments and renders this ruling on their award.

The federal Voting Rights Act provides: "In any action or proceeding to enforce the voting guarantees of the Fourteenth or Fifteenth Amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fees, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e); see also 42 U.S.C. § 1988(b). Awards of attorneys' fees and litigation costs are encouraged in such civil rights lawsuits. See City of Riverside v. Rivera, 477 U.S. 561, 577–78 (1986). While an award of attorneys' fees is subject to the court's discretion, the prevailing party usually should recover fees. Unus v. Kane, 565 F.3d 103, 126–27 (4th Cir. 2009). In their original motions for fees and costs, Plaintiffs rely on 52 U.S.C. § 10310(e), 42 U.S.C. § 1988, and Federal Rule of Civil Procedure 54(d)(2). (Doc. 499 at 1, 6 in case no. 1:13CV658; Doc. 487 at 2 in case no. 1:13CV660; Doc. 485 at 2 in case no. 1:13CV660.)

Plaintiffs are prevailing parties because they obtained the requested relief as a result of the Fourth Circuit's decision as to their claims under the Voting Rights Act and the United States

4

Constitution.[2]   McCrory, 831 F.3d 204.   Plaintiffs request

reimbursement for (1) attorneys' fees for some, but not all, of

Plaintiffs' counsel; (2) expert witness fees; and (3) other taxable

and/or otherwise reimbursable litigation expenses.  Each will be

addressed in turn.

**Attorneys' Fees**

The multiple Plaintiffs, including Intervenors, in these

lawsuits were represented by attorneys from the law firms of

Kirkland & Ellis, LLP, Perkins Coie, LLP, various civil rights

organizations, including Forward Justice and the Advancement

Project, the League, and individual attorneys including Ervin

Joyner and Adam Stein.  While many attorneys worked on these cases,

Plaintiffs report they do not seek several million dollars in fees

for the work performed by the law firms of Kirkland & Ellis, LLP

and Perkins Coie, LLP, or by Mr. Stein.  (Doc. 498 at 1 in case

no. 1:13CV660; Doc. 507 at 1 in case no. 1:13CV658.)

"In actions to enforce federal civil rights, § 1988

authorizes a court, 'in its discretion,' to 'allow the prevailing

party, other than the United States, a reasonable attorney's fee

as part of the costs.'" Blum v. Stenson, 465 U.S. 886, 897 (1984);

Daly v. Hill, 790 F.2d 1071, 1076 (4th Cir. 1986).  "[A] prevailing

---

[2]  As Plaintiffs note, they are prevailing parties even though they did
not win on their request for Section 3 oversight under the Voting Rights
Act and the Fourth Circuit found it unnecessary to reach the Duke
Intervenor's claims, having granted full relief.  See Hensley v.
Eckerhart, 461 U.S. 424, 434–37.

plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Lefemine v. Wideman, 758 F.3d 551, 556 (4th Cir. 2014) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). The special circumstances exception is narrowly construed, with courts denying fees in cases where the statutory goals of encouraging private plaintiffs to vindicate civil rights would not be served. See Chastang v. Flynn & Emrich Co., 541 F.2d 1040, 1045 (4th Cir. 1976); Morse v. Republican Party of Va., 972 F. Supp. 355, 359 (W.D. Va. 1997).

The amount of the fee "must be determined on the facts of each case." Hensley, 461 U.S. at 429–30. Based on § 1988's legislative history, which references three cases that "correctly applied" the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), the Supreme Court has held that the "lodestar," "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the "most useful starting point" and "normally provides a 'reasonable' attorney's fee within the meaning of the statute." Hensley, 461 U.S. at 429–33; Blum, 465 U.S. at 897. "A proper computation of the lodestar fee will, in the great majority of cases, constitute the 'reasonable fee' contemplated by § 1988," and "[i]f a lodestar fee is properly calculated, adjustment of that figure will, in most cases, be unnecessary." Daly, 790 F.2d at 1078. Only in

6

"exceptional circumstances" may the presumptively fair lodestar figure "be adjusted to account for results obtained and the quality of representation," rendering the lodestar fee "the proper focus of the entire Johnson analysis in most cases."  Id.

In calculating the lodestar, "reasonable fees under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."  Blum, 465 U.S. at 895.  "The fee applicant bears the burden of proving the reasonableness of the hours expended and the requested hourly rates, which generally requires submission of the attorney's own affidavit and timesheets as well as 'satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [the attorney] seeks an award.'"  Prison Legal News v. Stolle, 129 F. Supp. 3d 390, 396 (E.D. Va. 2015) (quoting Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008)).

"While the Supreme Court continues to endorse use of the Johnson factors in calculating fee awards . . . . [o]ut of a concern that upward adjustments of a lodestar figure can sometimes result in 'double counting,' . . . the Court has suggested that most Johnson factors are appropriately considered in initially determining the lodestar figure, not in adjusting that figure upward."  Daly, 790 F.2d at 1077.  Consideration of the Johnson

7

factors is proper for determining the reasonable rate and
reasonable hours, with all relevant facts considered at the same
time.  Id. at 1075 n.2, 1078.  The twelve Johnson factors, which
guide the lodestar analysis in determining a reasonable rate and
reasonable number of hours expended, are:

> (1) the time and labor expended; (2) the novelty and
> difficulty of the questions raised; (3) the skill
> required to properly perform the legal services
> rendered; (4) the attorney's opportunity costs in
> pressing the instant litigation; (5) the customary fee
> for like work; (6) the attorney's expectations at the
> outset of the litigation; (7) the time limitations
> imposed by the client or circumstances; (8) the amount
> in controversy and the results obtained; (9) the
> experience, reputation and ability of the attorney; (10)
> the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and
> length of the professional relationship between attorney
> and client; and (12) attorneys' fees awards in similar
> cases.

Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978);
see also E. Associated Coal Corp. v. Dir., OWCP, 724 F.3d 561, 570
n.5 (4th Cir. 2013).

As this court has previously acknowledged, the record in these
cases and the litigation itself was extensive.  See N.C. State
Conference of NAACP, 182 F. Supp. 3d 320, 331 (M.D.N.C. 2016).  At
the trial level alone, this court considered the testimony of 21
expert witnesses, 112 fact witnesses, and nearly 25,000 pages of
evidence.  The cases spanned nearly four years and included
interlocutory appeals to the Fourth Circuit Court of Appeals as
well as the United States Supreme Court on more than one occasion.

8

Complex and novel questions of law were at issue, which required
significant lawyering skill on all sides.  There were also many
times when the exigency of the situation, including impending
elections and trial dates, required significant attorney time
under short deadlines.  Much has been written about the complexity
of these cases, so any further discussion is not worth belaboring.

In total, counsel report devoting approximately 14,224 hours
on these cases.[3]  The court is in a difficult position to assess
whether, given the number of counsel on these cases, there was
unnecessary duplication of effort.  The N.C. NAACP Plaintiffs and
Duke Intervenors represent, and the court has no practical way to
dispute, that they have made a good faith effort to exclude from
the fee request hours that are excessive, redundant, or otherwise

---

[3] The League's brief in support of its motion for attorneys' fees, expert
fees, and litigation expenses states that counsel reasonably expended
8,668.22 hours on this case.  (Doc. 486 at 8 in case no. 1:13CV660.)
The time records for these hours are provided in the Declaration of
Allison J. Riggs ("Riggs Declaration") for the SCSJ attorneys, and the
Declaration of Dale Ho ("Ho Declaration") for the ACLU attorneys.  (Id.
at 9.)  The Riggs Declaration provides a table summarizing the time for
which the SCSJ Plaintiffs are seeking fees that lists the total hours
as 5,167.86.  (Doc. 485-1 ¶ 37 in case no. 1:13CV660; id. at 49–155.)
The Ho Declaration provides 3,448.51 total hours worked for the ACLU
Plaintiffs as of September 22, 2017.  (Doc. 485-2 at 24.)  Adding together
the hours worked from the Riggs and Ho Declaration equals 8,616.37 hours.
It is unclear why there is a discrepancy between the hours listed as
worked in the memorandum and the hours documented in the attached
exhibits.  Because the declarations, and not the memorandum, constitute
evidence, the court has treated 8,616.37 hours as the total number of
hours worked by the League Plaintiffs.

9

unnecessary.[4]  Moreover, they are waiving all attorneys' fees from

the law firm of Kirkland and Ellis, LLP, which they represent to

be nearly $9,000,000, and the Duke Intervenors are waiving all

attorneys' fees incurred litigating their case, represented to be

over $2.3 million.  Having reviewed the declarations of counsel

and exhibits filed in support, the court cannot say that the time

expended by counsel was unreasonable in light of the complexity

of these cases, the volume of discovery, the number of hearings

and trials, the appeals, and the nature of the claims themselves.

In addition, as noted earlier, the combined request for counsel

fees was $5,874,970.55, while the parties' negotiated resolution

calls for reimbursement of $3,818,730.86, representing a 35%

reduction.

Given the negotiated settlement of the motions for attorneys'

fees in these cases, it is difficult to determine the basis for

the reductions from the initial requests.  However, for the reasons

noted above, and having carefully reviewed the more than 1,000

pages of materials in support of the joint motion, the court

similarly finds that the hours expended by counsel, adjusted by

the negotiated settlement, appear to be reasonable.

The court also finds that the effective hourly rates for the

---

[4] For example, Mr. Spiva, Duke Intervenors' counsel, represents he
eliminated $41,434.60 in attorneys' fees from the consideration on this
ground.  (Doc. 490-1 at 6 in case no. 1:13CV660.)  This constitutes a
42% reduction.

attorneys involved, as reflected indirectly by the negotiated
settlement and as modified only slightly as noted herein, are
reasonable, given the nature and complexity of the litigation.
Plaintiffs have sufficiently supported their original fee motions
by providing "affidavit evidence regarding the reasonableness of
the hourly rates sought in light of the nature of the litigation,
the customary fees in this market, and the experience, reputation,
and abilities of plaintiff's counsel"; this is especially true in
this situation where Defendants do not contest the reasonableness
of the hours or hourly rates, at least as reflected in the proposed
compromise resolution.    Lilienthal v. City of Suffolk, 322 F.
Supp. 2d 667, 672 (E.D. Va. 2004).  As set forth more particularly
in the submitted declarations and exhibits, the unadjusted hourly
rates for lead counsel from Forward Justice range from $796 to
$864 an hour, for Mr. Joyner and two attorneys from Forward Justice
and the Advancement Project they range from $325 to $550 an hour,
and for one Forward Justice paralegal the rate is $200 an hour.
(Doc. 499 at 11 in case no. 1:13CV658.)  The rates for the League
attorneys range from $125 to $550 an hour.  (Doc. 485-1 at 11 in
case no. 1:13CV660; Doc. 485-2 at 15 in case no. 1:13CV660.)  The
rates for the Duke Intervenors range from $525 to $995 an hour.
(Doc. 490-1 at 9–10 in case no. 1:13CV660.)

The Duke Intervenors' hourly rates exceed that of most others,
particularly for the years 2017 and 2018.  See (id.)  It is notable

that Perkins Coie's rates increased at near meteoric speed from 2016 to 2018. In several instances, they increased anywhere from 52 percent to 67 percent in that two-year period. For example, one lawyer's hourly rate jumped from $430 to $650 to $720. (Id.) Others went from $530 to $725 to $805; from $520 to $750 to $870; and from $655 to $850 to $995. (Id.) Little is provided to justify these huge increases in billing rates, other than to provide survey data on published billing rates in the Washington, D.C. legal market. (Id. at 10.) However, these are only published rates and do not reflect effective collected rates, which would incorporate discounts and realization adjustments. It is commonly accepted that over the years many major law firms have increased billing rates significantly and clients insist on steep discounts. Indeed, here the Duke Intervenors report that they have unilaterally applied a 20 percent discount to all their lawyers' rates. (Id. at 11.) They conclude that this renders their rates "well below the prevailing market rates." (Id.)

While the relevant market for determining attorneys' billings rates is ordinarily the community in which the court where the action is prosecuted sits, where it is reasonable to retain attorneys from other communities, rates in those communities may also be considered. Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 175 (4th Cir. 1994). Where it is reasonable to retain attorneys from other communities, such as when counsel in the

12

local forum is unavailable due to "[t]he complexity and specialized nature of a case," the court has the discretion to award the reasonable rates of counsel's jurisdiction rather than the local forum.  Id.; Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 317–18 (4th Cir. 1988).  Because voting rights cases are highly specialized and complex, and the Spiva Declaration explains the extensive relevant experience and specialized knowledge of counsel, the court finds it appropriate to consider the Duke Intervenors' Washington, D.C. rates.  However, even with a 20 percent discount, the rates sought exceed what the court can conclude are reasonable in this circumstance.  A reduction of approximately 30 percent or more from the proposed rates would be more in line with reasonable effective hourly rates, especially where the only legal work to be compensated is the preparation of the motion for attorneys' fees and costs rather than prosecuting the underlying substantive claims.  Therefore, the court would not have approved the initial request for Duke Intervenors' attorneys' fees; but in light of the parties' negotiated resolution of a total fee of $37,242.86, the court agrees that this amount falls within an appropriate and reasonable attorneys' fee to the Duke Intervenors.[5]

---

[5] Duke Intervenors point out that in light of their having waived what they report is approximately $2.3 million in attorneys' fees, their request constitutes approximately 2 percent of their total fees in their

13

Among the remaining counsel, the most significant hourly rate
is reported for Ms. Hair.  The court notes her extensive experience
litigating voting rights cases, including two arguments at the
United States Supreme Court.  (Doc. 497-2 at 4-6 in case no.
1:13cv658.)  She is uniquely qualified and experienced to handle
such cases.  Given her education, training, and experience, the
court finds that the highest hourly rate for her time, as reflected
by the negotiated resolution herein, appears reasonable.  The fees
for the remaining attorneys for the N.C. NAACP and League – at
least as discounted herein -- fall within what the court observes
to be the prevailing market rates in the relevant community for
this type of work.  See, e.g., Personhuballah v. Alcorn, 239 F.
Supp. 3d 929, 948 (E.D. Va. 2017) (approving rates as follows:
$575 for senior partners, $390 to $410 for senior associates, and
$310 to $345 for junior associates), vacated and remanded on other
grounds, Brat v. Personhuballah, 883 F.3d 475 (4th Cir. 2018).

Here, there are no special circumstances that would render
the award of attorneys' fees unjust.  And apart from the slight
adjustment in hourly rates noted above, there are also no
exceptional circumstances requiring the "presumptively reasonable
lodestar fee" to be adjusted.  Having found the rates and hours

---

case.  (Doc. 490-1 at 6 in case no. 13CV660.)  While perhaps true,
because the court does not have the benefit of any time sheets or other
information underlying the work for that representation, the court is
in no position to gauge the value of it.

14

reasonable, as adjusted, and noting that the Defendants have agreed to these figures as well, the court therefore finds that the combined fee request of $3,818,730.86 to be appropriate in these cases.

**<u>Reasonable Expenses as Part of Costs</u>**

Plaintiffs are also entitled to an award of reasonable expert fees and other litigation expenses as part of costs. 52 U.S.C. § 10310(e). The N.C. NAACP Plaintiffs seek expert fees for four experts: Allan Lichtman, Ph.D.; Barry Burden, Ph.D.; Loraine Minnite, Ph.D.; and James LeLoudis, II, Ph.D. (Doc. 498-1 at 4-7 in case no. 1:13CV658.) The League Plaintiffs seek expert fees for four experts: Morgan Kousser, Ph.D. and Cynthia Duncan, Ph.D. (Doc. 485-1 ¶ 65 in case no. 1:13CV660 (SCSJ experts)); Theodore Allen, Ph.D., and Paul Gronke, Ph.D. (Doc. 485-2 ¶ 25 in case no. 1:13CV660 (ACLU experts)). The Duke Intervenors seek expert fees for four experts: Kei Kawashima-Ginsberg, Ph.D.; Peter Levine, Ph.D.; Dione Sunshine Hillygus, Ph.D.; and John B. Holbein, Ph.D. (Doc. 490-1 at 11-13 in case no. 1:13CV660.) The court's evaluation of these expenses parallels that for the lawyers.

The court finds that it is reasonable to compensate these experts, and that their hourly rates are reasonable in light of their expertise in voting rights and other matters as well as the prevailing market rates for experts of their caliber in such cases. Dr. Burden charges $250 an hour (doc. 497-1 at 5 in case no.

15

1:13CV658); Dr. Lichtman charges $400 an hour (or $50 an hour for research assistance and proofing) (id. at 5–6); Dr. LeLoudis charges $300 an hour or $150 an hour (adjusted for the type of work performed) (id. at 7); Dr. Minnite charges $100 an hour (id.); Dr. Kousser charges $400 an hour (doc. 485-1 at 21 in case no. 1:13cv660); Dr. Duncan charges $1,150 per day (id. at 22); Dr. Allen charges $150 an hour (doc. 485-2 at 19 in case no. 1:13CV660); Dr. Gronke charges $225 an hour (id. at 20); Drs. Levine and Kawashima-Ginsberg charge $150 an hour (doc. 490-1 at 12 in case no. 1:13CV660); and Drs. Hillygus and Holbein charge $300 an hour (id. at 13).[6] Plaintiffs' original requests for expert fees reflects the following: $201,339.89 for the League Plaintiffs' experts (Doc. 486 at 2 in case no. 1:13CV660); $433,674.84 for the N.C. NAACP Plaintiffs' experts (Doc. 499 at

_____

[6] Review of the billing records indicates that Dr. Duncan billed her time in half-day increments. (Doc. 485-1 at 156–60 in case no. 1:13CV660.) Dr. Allen sometimes billed in daily increments (Doc. 485-2 at 82–83 in case no. 1:13CV660); otherwise he billed his time to the nearest hour in every single instance (id. at 81, 83). Dr. LeLoudis also billed his time to the nearest hour in every single instance. (Doc. 497-1 at 26, 95–96 in case no. 1:13CV658.) In other words, there is no time entry not recorded to a full hour. The same is true for David Ely, an assistant for one of the experts, who also billed nothing but complete hour blocks. (Id. at 21, 106.) In similar fashion, Dr. Minnite consistently recorded time and charged only in blocks of one-half hour or one hour. (Id. at 29, 54, 60, 109.) This contrasts with the standard prevailing billing practice of attorneys, which generally requires recording time to the nearest tenth of the hour (e.g., every six minutes), which clearly provides a more accurate accounting of time. Insofar as Defendants have not objected to these billing practices, the court will not undermine the parties' agreement.

16

3); and $77,187.84 for the Duke Intervenors' experts (Doc. 490-1 at 11 in case no. 1:13CV660). The total of expert-related expenses sought in the original motions is $712,202.57. This figure has apparently been compromised, as noted below.

**Other Litigation Expenses as Part of Costs**

Finally, Plaintiffs seek recovery of certain expenses and costs pursuant to Federal Rule of Civil Procedure 54(d) and Section 10310(e). These include out-of-pocket costs such as travel, lodging, copies, postage, deposition costs, printing, and the like. These are all appropriately reimbursable costs.[7] The court notes in particular that while the law firm of Kirkland and Ellis, LLP has waived any claim for its attorneys' fees, it does seek reimbursement of costs.[8] The court finds these litigation costs and expenses to be reasonable, and will award them pursuant to Rule 54(d) and Section 10310(e).

A summary of expenses and costs sought is provided as follows:

---

[7] Included in the motions are requests for reimbursement of $7,760 in private process server fees. Another judge of this court has concluded that such fees are not properly reimbursable under 28 U.S.C. § 1920 notwithstanding this court's Local Rule 54.1(c)(1)(v). See Qayumi v. Duke Univ., Case No. 1:16cv1038, Order (M.D.N.C. Oct. 11, 2018). Because the parties have agreed on a resolution of all costs and expenses, thus compromising any claim in this regard, the court will not disturb their agreement.

[8] Kirkland and Ellis, LLP has capped any travel costs for airfare at $300 ($150 each direction) as an accommodation.

17

| Plaintiff Group | Summary of Non Taxable Expenses | Summary of Taxable Expenses |
|---|---|---|
| Kirkland & Ellis LLP | $405,221.73 | $260,431.85 |
| Forward Justice | $3,676.19 | $0 |
| Advancement Project | $304,270.74 | $825.54 |
| Irving Joyner | $2,007.40 | $0 |
| **Total** | **$715,176.06** | **$261,257.39** |

The Duke Plaintiffs seek $177,651.94 in non-taxable expenses and $44,912.51 in taxable expenses, for a total of $222,564.45 in expenses (excluding expert costs). (Doc. 490-2 at 42 in case no. 1:13CV660.) The League Plaintiffs did not differentiate between taxable and non-taxable expenses. Instead, they claimed a total of $191,730.95: $102,696.61 to the ACLU Plaintiffs and $89,034.34 to the SCSJ Plaintiffs.[9]

_____

[9] The League's motion for attorney fees (Doc. 485 at 2 in case no. 1:13CV660) and briefing (Doc. 486 at 2 in case no. 1:13CV660), state that it seeks compensation for litigation expenses in the amount of $192,230.95, while at other points the League's briefing states that it seeks compensation for reasonable litigation expenses in the amount of $191,730.95 and that backup documentation can be found in the Riggs Declaration and Ho Declaration (Doc. 486 at 4, 22 in case no. 1:13CV660). The Ho Declaration states that the ACLU Plaintiffs are claiming $102,696.61 in costs and expenses. (Doc. 485-2 ¶ 32 in case no. 1:13CV660; id. at 93-108.) The Riggs Declaration provides a summary of litigation expenses that groups together "Experts/Honoraria/Researchers" into one category and provides the total for all expenses. (Doc. 485-1 at 166 in case no. 1:13CV660.) The detailed litigation expenses in the Riggs Declaration (id. at 165-73) provides the itemized expenses within the "Experts/Honoraria/Researchers" category. (Id. at 167.) When the six entries for the experts' expenses are subtracted from the overall $220,523.74 in expenses for that category to avoid double-counting the experts' expenses, the total expenses for the SJSC Plaintiffs are $89,034.34, which, when added to the amount of expenses claimed by the

As part of their proposed compromise, the parties have agreed upon total expenses and costs, including expert expenses, in the following amounts: $1,410,111.29 for N.C. NAACP Plaintiffs; $299,752.29 for the Duke Intervenors; and $393,570.84 for the League Plaintiffs. (Doc. 507 at 3 in case in case no. 1:13CV658; Doc. 498 at 3 in case no. 1:13CV660.) This results in a total of costs and expenses of $2,103,434.42. (Id.)

Therefore, after full consideration of all matters brought before the court regarding the motions, and for good cause shown,

IT IS HEREBY ORDERED that:

1. The motion is GRANTED, and Defendants shall pay Plaintiffs' costs and expenses in the amount of $2,103,434.42, and attorneys' fees in the amount of $3,818,730.86, for a total award of attorneys' fees and litigation expenses in the amount of $5,922,165.28, which are to be allocated among Plaintiffs' counsel in the three cases as follows:

| FINAL | FEES | COSTS | TOTAL |
|---|---|---|---|
| NC NAACP | $ 1,829,310.02 | $ 1,410,111.29 | $ 3,239,421.31 |
| Duke | $ 37,242.86 | $ 299,752.29 | $ 336,995.15 |
| League | $ 1,952,177.99 | $ 393,570.84 | $ 2,345,748.83 |
| Total | $ 3,818,730.86 | $ 2,103,434.42 | $ 5,922,165.28 |

---

ACLU Plaintiffs, is consistent with the overall expenses amount claimed in the League briefing, $191,730.95. Because the Declarations constitute evidence, and the total number is consistent with one of the amounts claimed in the League's briefing, the court has considered the $191,730.95 amount rather than the amount provided in the League's motion.

Plaintiffs' counsel for each case shall allocate such costs, expenses, and attorneys' fees awarded in connection with their case as agreed among themselves.

2.   As agreed to by Defendants, Defendants shall pay this award of costs, expenses, and attorneys' fees within sixty (60) days of the date of this Order.   Payment to the N.C. NAACP Plaintiffs' counsel shall be made to Kirkland & Ellis, LLP; to the League Plaintiffs' counsel to the Southern Coalition for Social Justice; and to the Duke Intervenors' counsel to Perkins Coie, LLP.

                                    /s/   Thomas D. Schroeder
                                    United States District Judge

December 7, 2018